# Court of Sessions — Erie County.

*July,* 1886.

## PEOPLE *v.* SELLICK.

### IRREGULARITIES OF GRAND JURY—EVIDENCE. BEFORE.

After the grand jury was impanelled, one W. wrote a postal card to its members requesting them to call upon him, had interviews with them, called their attention to a case to be brought before them, requested their investigation of the same, and made various statements regarding the facts of the case to them. *Held,* that an indictment thereafter found by the grand jury in such case should be set aside on the ground of improper influence.

Such acts of W., although grossly improper, are not a criminal contempt of court.

The affidavits of the grand jurors in such case will not be received to contradict the presumption that they were influenced by such communications. *Code Civ. Pro.* § 8.

An indictment found upon the testimony of a physician as to privileged communications between himself and his patient, the disclosure of which is forbidden by Code of Civil Procedure, section 834, will be set aside. The grand jury can receive none but legal evidence which would be admissible on the trial.

MOTION by defendant, Horace Sellick, to set aside an indictment for abortion.

*Emory Sickmorr,* for the motion.

*E. W. Hatch,* district attorney, in opposition.

HAMMOND, C. J.—This motion is made upon two grounds: *First,* that the records of the court show that the members of the grand jury were improperly influenced; and *second,* that the minutes of the evidence given before the grand jury show that it received and acted upon incompetent and illegal evidence in finding said indictment.

Some days after the grand jury had been properly organized,

VOL. IV.—42

they came into court with a presentment, which was ordered placed upon the records of the court, composed of affidavits of ten of the members of the grand jury, which affidavits showed, substantially, that after the names of the grand jurors had been drawn, and before the day upon which the court convened, some of them had received by mail postal cards addressed to them, in substance as follows:

" CHARLES F. WHITCHER,
"*Attorney at Law, No.* 176, *Pearl street,*
" BUFFALO, N. Y., *June* 8, 1886.

"Please call at this office on business of importance to you, and oblige,     Yours, &c.,
" CHARLES F. WHITCHER."

That in response to said postal cards, some eight or nine of the grand jurors called at his office, and one or two he saw at other places; that in his interviews with said grand jurors, he stated to some of them in substance that "there was a case to come before them against the defendant, that Sellick had got entangled with a girl living in his family, and had become intimate with her," and that "he had been at a hotel on Seneca street and passed her for his wife, and stayed over night with her," and that "the consequence was the girl got in a family way, that Sellick took her to a hotel and there an abortion was effected," and that "they were trying to smother it up so that it would not come before the grand jury," and that "Sellick was guilty, and the district attorney might not present the case to the grand jury, he might think there was nothing in it," and that he (Whitcher) "had written to or seen most of the grand jurors, and it was all right that he should call their attention to the case," that "he was attorney for the girl's father, and desired it should be investigated by the grand jury," &c., &c.

With this communication, the grand jury asked for instructions concerning the matter, upon which the court stated to them that the whole matter was before them, and they could examine into and determine the case as they should deem proper, and could also examine and determine whether the offense of em-

bracery had been committed, under the provisions of section 75 of the Penal Code.

It is proper, in this connection, to state that the grand jury did not indict Mr. Whitcher for embracery, and that upon this motion the district attorney reads Mr. Whitcher's affidavit denying substantially that he had told any of the grand jurors that Sellick had committed an offense, or that he was guilty of any offense, but admitting the writing of the postal cards, and the fact of his interviews with the grand jurors and of calling their attention to the case, but that he only desired a full and fair investigation of the case by them.

These are substantially the facts upon which the first ground of this motion must be determined.

It does not seem from these facts that the grand jurors *themselves* have been guilty of any real misconduct, which would warrant the granting of this motion upon that ground, whatever we may think of the propriety of a grand juror holding conversation with any person outside the grand jury room, concerning matters to come before them in their official capacity; so we have only to determine the question whether these indictments should be dismissed by reason of this improper influence upon the grand jurors by Mr. Whitcher.

Wharton, in his treatise on *Criminal Practice and Pleading*, eighth edition, section 307, says: "Sending an unofficial volunteer communication to the grand jury, inviting them to start, on their own authority, a prosecution, is a contempt of court, and a misdemeanor at common law."

In a note to this section, in speaking of "personal solicitation to members of the grand jury, to obtain or prevent the finding of an indictment of parties," the author quotes, approvingly, the language of Justice FIELD, of the Supreme Court of the United States, as follows:

"All such communications are calculated to prevent and obstruct the due administration of justice, and to bring the proceedings of the grand jury into contempt. Let any reflecting man, be he layman or lawyer, consider the consequences which would follow, if every individual could, at his pleasure, throw his malice or his prejudice into the grand jury-room, and he

will necessarily conclude that the rule of law which forbids all communication with grand juries engaged in criminal investigations, except through the public instructions of courts and the testimony of sworn witnesses, is a rule of *safety* to the community. What value could be attached to the doings of a tribunal, so to be approached and influenced? How long would a body so exposed to be misled and abused, be recognized by freemen as among the chosen ministers of liberty and security? The recognition of such a mode of reaching grand juries would introduce a flood of evils, disastrous to the purity of the administration of criminal justice, and subversive of all public confidence in the action of these bodies. . . . . By an act of Congress, passed in 1872, such solicitations are indictable." Again, in section 956, he says: "And it has been held to be a contempt of court, to solicit a juror to give a signal after the jury have retired to indicate whether they are likely to agree, . . . . or in other ways to tamper with the jury. *The same rule has been applied to sending volunteer information to a grand jury.*"

An examination of the statutes relative to contempts of a criminal nature, shows, that the acts complained of by the defendants as causing this improper influence of the grand jury, are not punishable as contempt of court, because they do not come within the provisions of section 8 of the Code of Civil Procedure, which provides that the acts therein enumerated, " *and no others,*" may be so punished.

Still, we are entirely satisfied that such acts are decidedly improper, because, if one person who honestly believes an indictment *should* be found may write letters to, and hold conversations with, grand jurors, urging them to investigate a case to that end, may not any other person who honestly believes an indictment should *not* be found do the same things to that end? And if this may be done by *one* person, it may be done by all; and if it may be done with one grand juror, it may be done with all; and what a spectacle would this present, giving the right to every person, as soon as a grand jury is drawn, to labor with each individual member thereof, at his home, upon the street or in place of business, by speech by writing and by printing, to adopt the views of every such person, either to

find, or not to find, an indictment in each particular case. Certainly no value could be attached to the doings of a tribunal so to be approached and influenced, so to be abused and misled. And we think in a case where such circumstances are shown to exist, where such communications as are shown in this case to have been made to the members of the grand jury, that it should be *conclusively presumed* that the grand jury were influenced by them, and that the affidavits of individual members of the grand jury should not be heard to contradict such presumption, or show that they were not, in fact, so influenced. And, further, we think that no court ought to allow any person to be put upon trial upon an indictment found, where such influences are shown to have been brought to bear upon the jury; and that a motion to dismiss an indictment, found under such circumstances, should be granted. So, that if no other ground for this motion existed, we should feel it our duty to set aside or dismiss these indictments.

But in our opinion the other ground of this motion is also fatal to these indictments.

The minutes of the evidence read upon this motion, and as taken before the grand jury, disclose the fact that two physicians were consulted in their professional capacity by each of these defendants, concerning the transactions which are charged as offenses in these indictments; and these two physicians were summoned before the grand jury, and each gave quite important evidence concerning the matter, and stated material facts which it appears must have been learned by them from conversations with the defendant and personal examination of the girl in their professional capacity; and from an examination of the minutes of the evidence taken by the grand jury, it is a matter of some doubt whether these indictments would have been found without this evidence of the physicians.

Section 834 of the Code of Civil Procedure provides: "A person duly authorized to practice physic or surgery *shall not be allowed* to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."

The case of the People v. Murphy (lately decided by the

Court of Appeals of this State, and reported in 3 *N. Y. Crim.* 338), holds squarely that this provision is applicable to a criminal action.    It also holds that "the fact that the physician was *sent by the public prosecutor* to make an examination of a female upon whom an abortion was alleged to have been committed, does not entitle the physician to disclose the information thus obtained after the relation of physician and patient had been established."

Section 256 of the Code of Criminal Procedure reads : "The grand jury can receive none but legal evidence."

It seems to us that the evidence of these physicians, as given by them upon this investigation before the grand jury, was incompetent and illegal beyond any question, and ought not to have been given ; and that it must from its very nature have influenced them in the finding of these indictments, seems equally clear.

Wharton, before quoted, section 363, says : "And it is the duty of the prosecuting officer of the State to take care that no evidence is received by them which would not be admissible at trial."

If this is good law—and we see no reason to question its soundness—then the district attorney should have *taken care* that this illegal evidence of these physicians should not have been given.

Upon both of these grounds, and for the reasons stated, we are of the opinion that a due regard for the proper administration of the criminal law, requires that both of these indictments should be dismissed, and the cases sent to the next grand jury for investigation, when the district attorney can "*take care* that no evidence is received by them which would not be admissible at trial ;" and as it will be then understood that the cases will be presented to the grand jury, it is fair to presume that no attempts will be made by any person to influence such grand jury or any member thereof, as the necessity for calling their attention to the case will not then exist.

The motion to dismiss both the indictments is granted, and the cases directed to be investigated by the next grand jury.

NOTE.—In People *v.* Briggs (60 *How.* 17) an indictment was quashed for the reason that the wife of the defendant was permitted to testify against him before the grand jury, contrary to law.